UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/27/2019

UNITED STATES OF AMERICA,

-against-

ULYSSES LOPEZ and VALENTINO LOPEZ,

Defendant.

No. 18-CR-736 (NSR)
ORDER & OPINION

NELSON S. ROMÁN, United States District Judge

Defendants Ulysses Lopez ("U. Lopez") and Valentino Lopez ("V. Lopez") (collectively, "Defendants") are charged in a one-count indictment with conspiring to distribute, and to possess with the intent to distribute, five kilograms or more of cocaine and 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Indictment, ECF No. 2.) Before the Court are Defendants' pretrial motions (1) to dismiss the indictment, (2) for severance, (3) to direct the Government to provide a bill of particulars, (4) to order a conspiracy hearing, and (5) to demand that the Government provide various forms of discovery and disclosures. (U. Lopez Mem. of Law in Support of Pre-Trial Motions ("UL Mot."), ECF No. 38; V. Lopez Mem. of Law in Support of Pre-Trial Motions ("VL Mot."), ECF No. 41.)

For the following reasons, Defendants' motions are DENIED.

## **BACKGROUND**

From at least April 2018 through October 2018, Defendants U. Lopez, V. Lopez, Christian Lopez, Saturnino Farias, Jose Oceguera, Felipe Cortes, and Felipe Barajas,[1] as well as several other unidentified individuals, allegedly engaged in a drug-trafficking conspiracy that operated out of the SuperMercado Mexico on 100 Union Avenue in New Rochelle, New York. (Indictment ¶ 1;

---

[1]    Defendants Farias, Oceguera, and Cortes have all pleaded guilty to conspiring to distribute cocaine. Defendant Christian Lopez did not file a motion.

1; Gov't Mem. of Law in Opp'n to Defs.' Pre-Trial Mots. ("Gov't Opp'n"), ECF No. 50, at 2.) As part of this conspiracy, Defendants planned to distribute, and to possess with the intent to distribute, at least five kilograms of cocaine and at least 50 grams of methamphetamine. (Indictment ⁋⁋ 2-3.)

Between July 2018 and September 2018, Defendants allegedly engaged in several overt acts to further this conspiracy, namely phone calls to discuss narcotics transactions. (*Id.* ⁋ 5.) The Government first alleges that, during a July 13, 2018 phone call, U. Lopez talked to Christian Lopez about selling narcotics on consignment. (*Id.* ⁋ 5(a).) That same day, U. Lopez placed a phone call to Saturnino Oliveros Farias about Farias purchasing narcotics from U. Lopez. (*Id.* ⁋ 5(b).) Next, on July 16, 2018, U. Lopez allegedly called Jose Oceguera to discuss Oceguera purchasing additional narcotics from U. Lopez, and the following day, on July 17, 2018, U. Lopez called Felipe Cortes to discuss Cortes purchasing three kilograms of cocaine for two different customers. (*Id.* ⁋ 5(e)-(d).) Then, on July 18, 2018, U. Lopez purportedly called Felipe Barajas to discuss brokering a narcotics transaction between U. Lopez and a third party. (*Id.* ⁋ 5(e).)

Several months later, on September 28, 2018, U. Lopez and V. Lopez participated in a phone call to discuss V. Lopez purchasing a kilogram of cocaine from a supplier. (*Id.* ⁋ 5(f).) According to the Government, the two men also discussed how a third party wanted "40" for a "white bread roll"—allegedly "a large quantity of cocaine"—and eventually U. Lopez instructed V. Lopez to see if the narcotics would fit behind the refrigerator. (Gov't Opp. 2.)

On October 10, 2018, the Government filed a one-count indictment (the "Indictment") against Defendants. (ECF No. 2.) They were arrested and arraigned that same day, with Defendants entering pleas of Not Guilty. The present motions followed. (ECF Nos. 38 & 39.)

## DISCUSSION

### I.     Motion to Dismiss

Both Defendants have moved to dismiss Count One of the Indictment under Federal Rule of Criminal Procedure 7(c) and the Fifth and Sixth Amendment.  Defendants argue that the Indictment is facially insufficient because it is so vague that it fails to provide fair notice of what crime they are alleged to have committed.  (UL Mot. 3-6; VL Mot. 5-8.)  Defendants' position is ultimately unavailing.

Federal Rule of Criminal Procedure 12(b)(3)(B) provides the procedural mechanism to dismiss a criminal indictment in federal court.  Under this rule, a court may dismiss an indictment if it suffers from deficiencies enumerated therein.  Proving a defect, however, is a laborious task because of the low sufficiency threshold requirement for indictments, as detailed below.

In general, an indictment must have "a plain, concise, and definite written statement of the essential facts constituting the offense[s] charged."  Fed. R. Crim. P. 7(c)(1).  To this end, an "indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he [or she] must defend, and, second, enables him [or her] to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citation omitted).  This is ultimately a low bar to hurdle.  Indeed, the indictment need only "set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  *Id.* (citations and internal quotations omitted).

Although the language of the statute may be used to describe the offense, the description "must be accompanied with such a statement of the facts and circumstances as will inform the

accused of the specific offence, coming under the general description, with which he is charged."
*Id.* at 117-18.  Even so, an indictment need only address the "core of criminality" of an offense,
*i.e.*, the general essence of a crime and not the particulars of how a defendant effectuated the crime.
*United States v. D'Amelia*, 683 F.3d 412, 418 (2d Cir. 2012).

Finally, in reviewing an indictment, it is generally improper for a court to effectuate a
challenge based on evidentiary sufficiency or the merits of the case.  *United States v. Alfonso*, 143
F.3d 772, 776–77 (2d Cir. 1998).  And when considering a motion to dismiss, the court must
assume the truth of the factual allegations in the Indictment.  *Boyce Motor Lines, Inc., v. United
States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Clarke*, No. 05 CR. 017(DAB), 2006 WL
3615111, *1 (S.D.N.Y. Dec. 7, 2006).

 Here, the Indictment—which ultimately charges a conspiracy under 21 U.S.C. § 846—
clearly tracks the language of the relevant statutory provisions and provides facts to support its
claims.  For example, Count One charges that as a part and an object of the conspiracy that occurred
"[f]rom at least in or about April 2018 up to and including in or about October 2018," Defendants
"intentionally and knowingly" did "distribute, and possess with the intent to distribute, controlled
substances."  (Indictment ¶¶ 1-2.)  This charge matches the statutory language, which provides, in
relevant part, that "it shall be unlawful for any person knowingly or intentionally to . . . distribute,
. . . or possess with intent to . . . distribute, . . . a controlled substance."  20 U.S.C. § 841(a)(1).

Count One goes on to allege that the controlled substances that Defendants conspired to
distribute and to possess with the intent to distribute were "five kilograms and more of a mixture
and substance containing a detectable amount of cocaine," and "50 grams and more of
methamphetamine."  (Indictment ¶ 3.)  Again, this language is from the statute, which imposes a
mandatory minimum in cases of a narcotics violation involving, *inter alia*, "5 kilograms or more

of a mixture or substance containing a detectable amount of . . . cocaine," *id.* § 841(b)(1)(A)(ii), or "50 grams or more of methamphetamine," *id.* § 841(b)(1)(A)(iii).

Based on the above, there is no doubt that the Indictment is facially sound. It clearly meets the burden of "track[ing] the language of the statute charged" and stat[ing] the time and place (in approximate terms) of the alleged crime. *United States v. Clarke*, No. 05 CR. 017(DAB), 2006 WL 3615111, at *4-5 (S.D.N.Y. Dec. 7, 2006). On this basis alone, Defendants' motion to dismiss the Indictment for legal insufficiency fails.

But the Indictment goes even further than what is required. Specifically, the Indictment delineates six discrete overt acts—all implicating U. Lopez and one implicating V. Lopez—that purportedly were undertaken pursuant to the alleged conspiracy. (*See* Indictment ¶ 5.) This level of detail is more than enough to push the Indictment well beyond the requirements of 21 U.S.C. § 846. *See Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500, 514 (S.D.N.Y. 2005) (denying motion to dismiss indictment and explaining that "even if there were some defect in the charging of the overt acts themselves, that defect would have had no bearing on the sufficiency of the indictment").

Further, it bears noting that much of the substance of Defendants' challenge to the Indictment boils down to factual disputes and an apparent dearth of evidentiary support for the charges against the Defendant. (*See e.g.*, UL Mot. 4; VL Mot. 6.) But, again, the sufficiency of evidence is not a matter appropriately addressed on a pretrial motion to dismiss. *Alfonso*, 143 F.3d at 776–77. For this reason, the challenge also fails insofar as Defendants argue that the Indictment is legally insufficient based on the factual disputes and evidence acquired through discovery to date.

Defendants' motion to dismiss the entire Indictment is denied.

## II.    Severance

As the Supreme Court has explained, the "preference in the federal system [is] for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials seek to promote "economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 121 n.6 (1968) (internal quotations omitted).

Under Fed. R. Crim. P. 14(a), however, courts may "order separate trials of counts, sever the defendants' trials or provide any other relief that justice requires" in cases where "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." To this end, the Second Circuit has held that severance is necessary where there is a risk of "prejudicial spill over" or "irreconcilable defenses" between co-defendants. *United States v. Salameh*, 152 F.3d 88, 115-16 (2d Cir. 1998). Courts will consider variety of non-inclusive factors: "(1) The number of defendants and the number of counts; (2) the complexity of the indictment; (3) the estimated length of trial; (4) the disparities in the degrees of the involvement in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible to some of the defendants, but not others." *United States v. Santiago*, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001) (citing *United States v. Gallo*, 688 F. Supp. 736, 749 (E.D.N.Y. 1987)).

Nevertheless, severance is an extreme remedy. The burden is on the defendant to demonstrate that severance is proper, which is "not an easy [burden] to carry." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). The defendant "must establish prejudice *so great* as to deny [him or her] a fair trial." *Id.* In fact, a showing of mutually antagonistic defenses may not be enough to *per se* merit severance, such that a defendant may be required to show that the

defenses are "so irreconcilable as to conflict to the point of being mutually exclusive." *Id.* at 484.

And even in those circumstances where of the risk of prejudice is great, a limiting instruction will

often "suffice as an alternative to granting a Rule 14 severance motion." *United States v. Feyrer*,

33 F.3d 110, 114 (2d Cir. 2003).

In narcotics conspiracy cases, there is a "policy favoring joinder of trials," especially where

"defendants have been jointly indicted." *Cardascia*, 951 F.2d at 482; *see also Zafiro*, 506 U.S. at

539 (noting that joint trials "promote efficiency and serve the interests of justice by avoiding the

scandal and inequity of inconsistent verdict"). There will no doubt be some prejudice to defendants

tried together in these cases. But this prejudice often "is deemed outweighed by the judicial

economies results from the avoidance of duplicative trials." *See Cardascia*, 951 F.2d at 482-83.

Here, Defendants essentially advance three bases in support of severance. *First*,

Defendants contend that their defenses will be irreconcilably antagonistic.[2] (UL Mot. 7;

VL Mot. 3.) *Second*, Defendants argue that there will be substantial spillover in evidence that will

"taint" their respective trials. (UL Mot. 7; VL Mot. 4.) *Finally*, Defendants aver that a joint trial

will deny them from obtaining exculpatory evidence. (UL Mot. 7; VL Mot. 4.) As explained

below, all three bases lack merit.

### A. Antagonistic Defenses

Under Second Circuit law, defenses are "mutually antagonistic" or "irreconcilable" if

defendants "must make a factual demonstration that 'acceptance of one party's defense would tend

to preclude the acquittal of the other.'" *Salameh*, 152 F.3d at 116 (internal alterations omitted)

(quoting *United States v. Smith*, 788 F.2d 663, 668 (10th Cir. 1986)). However, the fact that co-

defendants have "mutually antagonistic defenses is not itself a ground for severance." *United*

---

[2]     In particular, V. Lopez maintains that "the discovery provided by the government reflects activities conducted
by his co-defendants—not by [him]." (VL Mot. 3.)

*States v. O'Connor*, 650 F.3d 839, 858 (2d Cir. 2011) (quoting *Zafiro*, 506 U.S. at 539). "[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Salameh*, 152 F.3d at 116.

Here, Defendants maintain that they will need to offer "conflicting defense theories during this trial" because of the differences in their alleged involvement in the conspiracy. (VL Mot. 4; *see also* UL Mot. 9.) These barebones contentions, however, do not establish that any conflicting arguments would be prejudicial enough to warrant severance of Defendants' trial. Rather, Defendants' arguments appear to be the type of "[f]inger pointing" that courts routinely hold is not a basis for severance. *See, e.g.*, *Cardascia*, 9541 F.2d at 485 (concluding that defenses were not "mutually antagonistic" where one defendant claimed he was "duped by the codefendants" and the other claimed "he was not party of the conspiracy, but rather an innocent and unknowing bystander"); *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) ("The mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance."); *United States v. Sezanayev*, No. 17 Cr. 262 (LGS), 2018 WL 2324077 (S.D.N.Y. May 22, 2018) ("Conspiracy liability does not depend on who was the 'head' and who was a willing subordinate—all co-conspirators are equally culpable). But even if the defenses were mutually antagonistic, severance would still not be required. The Court would easily be able to "instruct the jury that the Government bears the burden of proving its case beyond a reasonable doubt against each Defendant separately, and that the jury must consider the sufficiency of the evidence as to each Defendant separately." *Sezanayev*, 2018 WL 2324077 at *6.

## B. Spillover of Evidence

"'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes part of his [or her] trial solely due to the presence of co-defendants as to whom its admission is

proper." *Salameh*, 152 F.3d at 115. A defendant, however, cannot claim prejudice "when the evidence would have been admissible against him [or her] in a separate trial alone as a member of the conspiracy." *Id.* Thus, prejudice is "an unlikely occurrence when all defendants are charged under the same conspiracy count." *Id.*

Here, the crux of Defendants' spillover claim is that each will suffer "the taint which comes from the activities of" the other, subjecting them to "guilt by association."[3] (VL Mot. 4; UL Mot. 7.) This basis is not enough to establish the requisite prejudice warranting severance. By virtue of Defendants' alleged involvement in a conspiracy, "all the evidence [that would be] admitted to prove th[e] conspiracy, even evidence relating to acts committed by co-defendants, is admissible against" either of them.[4] *See Salameh*, 152 F.3d 111. Nor, as the Government notes, do Defendants point to any evidence that would both (1) be admissible only against the other and (2) constitute "prejudice so severe that" a conviction would ultimately be a miscarriage of justice, *see United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996) (quoting *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993)).

---

[3]     Defendants' reliance on *United States v. Mardian*, 546 F.2d 973 (D.C. Cir. 1976) is severely misplaced. In *Mardian*, defendant was charged with six other individuals, and the sole count he was charged under included a total of forty-five overt acts—only five of which involved defendant, who was otherwise only shortly involved in the conspiracy. *Id.* at 977-78. During trial, "it became even clearer that a substantial part of the testimony would focus on events after [defendant] ceased active participation." *Id.* at 978. As such, in this unique factual scenario, the D.C. Circuit concluded that severance was warranted. Similarly, *United States v. Spinelli*, another case on which Defendants rely, in fact supports joinder in this case. There, the Second Circuit ultimately affirmed the district court's denial of the motions for severance. 352 F.3d 48, 56 (2d Cir. 2003). As the court noted, "much of the evidence of [co-defendant's] crimes would have been admissible at a separate trial of [defendant], since it was relevant to proving the nature and scope of the conspiracy in which both were, to differing degrees, involved." *Id.* The court concluded that "defendant ha[d] not shown that otherwise inadmissible evidence about his brother's crimes, or the questions briefly raised about his own prior criminal activities, resulted in substantial prejudice." *Id.*

[4]     The fact that V. Lopez may have played a minor role ultimately has no bearing on whether he may be tried with U. Lopez or on the admissibility at trial of evidence of a conspiracy. *See United States v. Hameedi*, 2017 WL 5152991, at *5 (S.D.N.Y. Nov. 3, 2017) (rejecting spillover argument based on defendants' portrayal as "relatively minor participants" in the conspiracy because "[v]irtually all multi-defendant conspiracy cases involve one or more defendants who occupied minor roles in a conspiracy"); *United States v. Ferrarini*, 9 F. Supp. 2d 284, 290 (S.D.N.Y. 1998) ("[I]t is well established that defendants who played a minor role in a conspiracy may be tried with those who played a larger or dominant role).

In any event, even if there was spillover evidence that would be inadmissible against one Defendant but not the other, Defendants have failed to establish that "[a]ny spillover prejudice that may occur can[not] be corrected by the Court's instruction that the jury consider the guilt of each Defendant individually—an instruction that jurors are presumed to follow."  *United States v. Guerrero*, 669 F. Supp. 2d 417, 425 (S.D.N.Y. 2009) (citing *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984)).  In short, Defendants' spillover claims do not support severance.

## C. Deprivation of Exculpatory Evidence

Defendants' contention that they would be deprived exculpatory evidence without severance is equally unavailing.  In general, when assessing whether to grant severance on the basis that a co-defendant will offer exculpatory testimony, courts may consider several factors, including "(1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege against self-incrimination; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counterarguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment."  *United States v. Morelili*, No. S1 04 CR 391DAB, 2005 WL 743062, at *2 (S.D.N.Y. Mar. 29, 2005) (quoting *United States v. Finkelstein*, 526 F.2d 517, 523-24 (2d Cir. 1975)).

Here, in their respective moving papers, Defendants contend that they will be denied "exculpatory evidence in the form of testimony from his codefendant."  (VL Mot. 4; UL Mot. 7.)  Yet both Defendants have a constitutional right against self-incrimination under the Fifth Amendment, and neither has indicated a willingness to testify at the other's separate trial.  *Cf. United States v. Stella*, 1990 WL 128918, at *6-7 (S.D.N.Y. Aug. 27, 1990) (defendant offered affidavit establishing co-defendants intention to testify at a separate trial).  Without this factual basis, this Court has no way to conclude whether the proffered testimony (if any) would be

cumulative or be subjected to substantial, damaging impeachment.  With the fourth factor, judicial economy, plainly cutting in favor of a joint trial, this Court ultimately finds no basis to sever the trial based on the potential for exculpatory testimony.

Further, to the extent that Defendants challenge the prospect of statements of a co-defendant being offered against them, such concerns are unwarranted.  Both Defendants attempt to support their position by pointing to *Bruton v. United States* to argue that "severance is required if the People intend to offer statements of non-testifying codefendants."  (VL Mot. 4 (citing *Bruton*, 391 U.S. at 123); UL Mot. 9 (same).)  But *Bruton* stands for the unremarkable proposition "that a post-arrest statement made by a nontestifying defendant which facially incriminates a co-defendant is inadmissible at their joint trial despite a limiting instruction to the jury because it violates the co-defendant's right to cross-examination."  *United States v. Romero*, 897 F.2d 47, 53 (2d Cir. 1990).  Although these situations sometimes warrant severance, district courts nevertheless have the discretion to instead order redactions that "eliminate any directly incriminating references to [] co-defendants," and to give "the jury a proper limiting instruction."  *Id.*

As an initial matter, the Government has consented to making redactions if it offers any such statement, which moots the issue.  Further, Defendants have failed to identify any co-defendant statement that is facially incriminating.  *See United States v. Piervinanzi*, No. 5th S 89 Cr. 229(PKL), 1990 WL 139021, at *3 (S.D.N.Y. Sept. 18, 1990) ("Unless and until counsel for Marchese identifies statements made by a co-defendant which facially incriminate Marchese, the motion for severance based on *Bruton* must be denied").  Either way, severance under *Bruton* is not warranted.[5]

---

[5]  To the extent Defendants are challenging the inclusion at trial of statements made by co-conspirators pursuant to the conspiracy, such statements are not testimonial and do not present any confrontation clause issues.  *See United States v. Stewart*, 433 F.3d 273, 292 (2d Cir. 2006) ("[T]he Supreme Court stated that statements

In conclusion, Defendants have failed to set forth a sufficient basis to sever their trial.  The Court accordingly DENIES their motions for severance.

## III.    Conspiracy Hearing

Defendants ask this Court to hold a pretrial hearing to determine whether there is independent evidence that establishes a conspiracy and delineates Defendants' involvement in it. (UL Mot. 21-22; VL Mot. 18.)  In support, Defendants point to the Fifth Circuit's holding in *United States v. James*, 590 F.2d 575 (5th Cir. 1979), which requires courts to conduct a pretrial hearing to determine the existence of a conspiracy before permitting the government to introduce hearsay statements of co-conspirators at trial.  *Id.* at 581.

However, as the Government points out, this Circuit has a different procedure in place. Rather than holding a *James* hearing, the Second Circuit instructs courts to make a *Geaney* ruling, "which is provided only during trial, and relies for its basis on the facts adduced at trial, including evidence received subject to a motion to strike at the close of the Government's case."  *United States v. Feola*, 651 F. Supp. 1068, 1129-30 (S.D.N.Y. 1987) (citing *United States v. Geaney*, 417 F.2d 1116 (2d Cir. 1969)).  "Under the *Geaney* rule, statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" to establish the prerequisites for admission.  *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993).  The Government must persuade the Court that "the conditionally admitted coconspirator statements were made during and in furtherance of a conspiracy of which both the declarant and the defendant were members."  *Id.*  If it does so, the statements can go to the jury.  *Id.*  But if the Government does not meet its burden, then the court will either "instruct

in furtherance of a conspiracy were generally not testimonial and were exceptions to the hearsay rule that encountered no Confrontation Clause obstacle.").

the jury to disregard the statements, or, if those statements were 'so large a proportion of the proof as to render a cautionary instruction of doubtful utility,' [] declare a mistrial." *Id.*

Here, given the clear Second Circuit law, the Court sees no reason to hold a hearing pursuant to Fifth Circuit procedure. If the Government does ultimately decide to offer statements of co-conspirators at trial, the Court will follow the procedure delineated by the *Geaney* rule.

## IV.     Bill of Particulars and Discovery Requests

As a threshold matter, Defendants' motions for a bill of particulars and for discovery are procedurally barred by Local Criminal Rule 16.1 for the Southern and Eastern Districts of New York. According to Rule 16.1:

> No motion addressed to a bill of particulars or any discovery matter shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement.

Here, although U. Lopez's moving papers note that a "colleague from [his counsel's] office ha[d] attempted to *informally* receive [] information [regarding U. Lopez's bill of particulars request] from the Untied State's Attorney's Office" (UL Mot. 17-18 (emphasis added)), neither Defendant has filed the above-referenced affidavit with his motion. "By itself, that failure is fatal to [their] motion[s]."[6] *United States v. Dupigny*, No. S1 18-CR-528 (JMF), 2019 WL 2327697 (S.D.N.Y. May 30, 2019). As such, the Court may deny Defendants' motions for discovery and request for bill of particulars. *United States v. Minaya*, 395 F. Supp. 2d 28, 32 (S.D.N.Y. 2005).

In any event, as discussed below, Defendants' motions would still be denied.

---

[6]     Nor can the Court concluded on this record that the "informal" inquiry by U. Lopez's counsel referenced in the moving papers, and the Government's apparent response, is enough to be considered a good faith attempt toward resolution, as required under Rule 16.1.

## A. Bill of Particulars

Defendants ask this Court to direct the Government to provide a bill of particulars under Federal Rule of Criminal Procedure 7(f). (VL Mot. 8-10; UL Mot. 15-21.) Specifically, Defendants ask for whole slew of particulars that are targeted towards discerning more information about the conspiracy, its participants, and the nature of the charges against Defendants.[7] (VL Mot. 9; UL Mot. 16-17.)

Federal Rule of Criminal Procedure 7(f) allows a defendant to request a bill of particulars to obtain information relevant to "the nature of the charge against him [or her]," to enable him or her "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he [or she] be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)). The decision to grant a bill of particulars is within the sole province of the district court. *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988); *Minaya*, 395 F. Supp. 2d at 34.

A bill of particulars is only necessary "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), *abrogated on other grounds*, *United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). The central question is whether the "information sought is necessary, not whether it is helpful." *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990). Typically, where the information sought is "provided in the indictment or in some acceptable alternate form," such as discovery, "no bill of particular is required." *Bortnovsky*, 820 F.2d at 574.

Demands for information "with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." *Guerrero*, 669 F. Supp. 2d at

---

[7]     U. Lopez's motion further requests information about identity of the government's informants. This request will be discussed below, together with V. Lopez's request for the similar information.

426; *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001). Nor are defendants entitled to (1) "information regarding how the Government alleges the defendant performed acts in furtherance of the conspiracy," *see Minaya*, 395 F. Supp. 2d at 36 (citing *United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001)), or (2) more specified dates on which the alleged illegal conduct occurred, *see id.* at 35 (citing *United States v. Lorenzano*, No. S6 03CR1256, 2005 WL 975980, at *3 (S.D.N.Y. Apr. 26, 2005)).

Here, Defendants demand, *inter alia*, that the Government identify (1) other co-conspirators, (2) the dates on which Defendants entered into or left the conspiracy, and (3) additional overt acts not alleged in the Indictment. (*See, e.g.*, UL Mot. 16-18 ("Mr. Lopez needs to know circumstances of these allegations [including who were the members of the conspiracy and whether he is considered an accomplice or principal] in order to truly understand the charges against him, and to adequately prepare a defense."); VL Mot. 9 ("In essence, these requests seek the identities and roles of the defendant's alleged accomplices and unindicted co-conspirators.") These requests plainly seek the who, what, when, and where information "routinely denied" in this Circuit.

Defendants also seek details about whether they are charged as an aider and abettor or principal. (UL Mot. 16, 18; VL Mot. 9.) But where, as here, defendants proffer no arguments that "either the scope of the alleged conspiratorial conduct or the volume of discovery material necessitates the further identification of persons, places or events," *United States v. Robertson*, No. 07CR944, 2008 WL 220283, at *1 (S.D.N.Y. Jan. 23, 2008), a request for the "names of all co-conspirators and aiders and abettors" should be denied, *Minaya*, 395 F. Supp. 2d at 37. Defendants have thus failed to establish that their requests are appropriately addressed by a bill of particulars.[8]

---

[8] The holding in *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988) does not mandate a different result. The Indictment there focused on extortion allegations related to one company, while at trial the Government

Regardless, neither Defendant has established that a bill of particulars would even be necessary in this case. *First*, to the extent Defendants seek a detailed accounting of every overt act alleged to have been committed by each conspirator (*see, e.g.*, VL Mot. 9 (requesting the Government "8. List any overt acts not enumerated in the indictment. . . . 9. State what this defendant did to further the objects of the conspiracy . . ."); UL Mot. 17 (same)), the Indictment already details more than what Defendants are entitled, as previously discussed. *See Rosario-Dominguez*, 353 F. Supp. 2d at 514. *Second*, the Government has represented—and Defendants' motions acknowledge—that there has been considerable discovery in this matter. (Gov't Opp. 7.) According to the Government, this discovery has included "voluminous wiretap line sheets and records, controlled buy reports, lab reports for seized narcotics, and surveillance photographs." (*Id.*) Given the sufficiency of the Indictment and discovery provided to date, there is plainly no need for a bill of particulars. *See Bortnovsky*, 820 F.2d at 574; *Heatley*, 994 F. Supp. at 488 (denying motion for bill of particulars where indictment was sufficient and discovery was extensive); *United States v. McPherson*, No. 08CR1244, 2009 WL 4756470, at *2 (S.D.N.Y. Dec. 11, 2009) (denying request for bill of particulars where Indictment identified defendants' roles in conspiracy and Government provided discovery "relating to the allegations").

At bottom, Defendants have failed to establish that propriety or necessity of their motion for a bill of particulars. The motions are, as such, DENIED.

---

offered evidence of extortion aimed a three entirely different companies. *Id.* at 1154-55. The Court explained that it was "simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies" and held that the trial court should have required the government to, at minimum, identify the victims of the extortion schemes it intended to prove at trial. *Id.* at 1155. As the Court noted, the RICO statute accords "wide latitude" to the prosecution "to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering,'" thereby creating an obligation to particularize the nature of the charges. *Id.* at 1154. Such concerns, however, may "not be necessary in the prosecution of crimes of more limited scope," *id.*, such as the narcotics conspiracy charged here, *see United States v. Mancini*, No. 05 Cr. 299 (SCR), 2006 WL 8450193, at *8 n.4 (S.D.N.Y. Feb. 23, 2006).

**B. Disclosure of Identities of Informants and Cooperating Witnesses**

U. Lopez (and V. Lopez through his catchall claim) seeks the name and identity of the Government's informants and/or cooperating witnesses. (UL Mot. 19-21 (seeking informant identities); *see also* VL Mot. 18 (requesting this information through catch-all claim).) This request does not meet the exacting standard necessary to warrant early disclosure. "The government is not generally required to disclose the identity of confidential informants." *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997) (citing *Rovario v. United States*, 353 U.S. 53, 59 (1957)). Indeed, its interest in protecting "the anonymity of informants" is strong. *Id.* Consequently, the defendant "bears the burden of showing" that in the absence of disclosure, "he will be deprived of his right to a fair trial;" only then is disclosure proper. *Id.* "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden." *Id.*

Here, U. Lopez essentially argues that he needs the identities of informants because "[d]iscovery of this information is important to a determination whether issues regarding suppression exist." (UL Mot. 21.) That this disclosure *may* inform a decision about potential motion practice strikes the Court as mere speculation regarding the assistance that an informant's identity would provide. Plainly, Defendant has failed to overcome the strong public interest in protecting informants.

In any event, the Government has represented that it will, as part of its discovery obligations, disclose "the identities of the cooperating witnesses" to Defendants. (Gov't Opp. 18.) Therefore, absent any other basis for early disclosure and in light of the Government's intention to identify witnesses in due course, the Court DENIES the motion to compel disclosure of the Government's informants.

### C. Demand for Witnesses

Defendants demand that the Government provide a list of its witnesses. (UL Mot. 9-11; VL Mot. 10-12.) Defendants argue that they need this witness list because of "the difficulties the defendant[s] face[] in preparing for trial, the lack of detail provided in the indictment, and the government's inability to make a credible claim that witnesses will be subject to intimidation or danger should their identities be revealed." (UL Mot. 9; VL Mot. 10.) The Court is unpersuaded.

The decision of whether to order the Government to disclose a witness list early is within the discretion of the court. *See United States v. Turkish*, 458 F. Supp. 874, 880-81 (S.D.N.Y. 1978), Courts routinely deny requests for witness lists "in the absence of a specific showing that disclosure [of a witness list]" is "both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case." *United States v. Ordaz-Gallardo*, 520 F. Supp. 2d 516, 521 (S.D.N.Y. 2007) (alterations in original) (internal quotations omitted) (quoting *United States v. Bejasa*, 904 F.2d 137, 139-40 (2d Cir. 1990)). When determining whether disclosure of a witness list is appropriate, "the defendant's specific need for the information 'should be balanced against the possible dangers accompanying disclosure.'" *United States v. Kelly*, 91 F. Supp. 2d 580, 586 (S.D.N.Y. 2000) (internal quotations omitted) (quoting *United States v. Cafaro*, 480 F. Supp. 511, 520 (S.D.N.Y. 1979)).

Here, in arguing that they have made a specific showing for disclosure, Defendants point to the absence of violence in this case, their lack of a history of violence, the Indictment's lack of particularity, and the low likelihood that a release of names would cause witnesses to avoid appearing at trial. (UL Mot. 10; VL Mot. 11-12.) But, outside of some conclusory statements, Defendants have not established how early disclosure would be *material* to their case. Furthermore, the fact that early disclosure could put cooperating witnesses in jeopardy by

disclosing the fact they are cooperating with the government plainly weighs in favor of prohibiting disclosure at this juncture. *See United States v. Lewis*, No. 16-CR-786 (NSR), 2018 WL 6241445, at *7 (S.D.N.Y. Nov. 29, 2018). In any event, Defendants' request is premature, as the Government has not yet even determined who it plans to call as witnesses in this case. (*See* Gov't Opp. 23.) Accordingly, the Court DENIES Defendants' motion to compel disclosure of the Government's witness list.

### D. Co-Conspirator Statements

Among Defendants' requests is a demand that the Government provide all statements made by "co-defendants turned government informants" regarding, among other things, "the alleged conspiracy," "the allegations in the indictment," and "the government's theory of the case." (UL Mot. 12; VL Mot. 15.) These demands are unsupported by the law. The Second Circuit has made it clear that "Rule 16(a) simply does not encompass [co-conspirator statements]." *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir. 1974). Rather, "Rule 16 permits discovery only of a defendant's statements, not those of others." *United States v. Heatley*, 994 F. Supp. 483, 490 (S.D.N.Y. 1998) (citing *Percevault*, 490 F.2d at 130-31). Given this clear law, Defendants' requests for co-conspirator statements is DENIED.

### E. Remaining Discovery Demands: Rule 16, Rule 404(b), *Brady*, *Giglio*, and Jencks Act Disclosures

The remainder of Defendants' motions seek various disclosures, essentially implicating Rule 16 discovery, Rule 404(b) disclosures, *Brady* disclosures, *Giglio* disclosures, and Jencks Act materials. (UL Mot. 11-15, 22-24; VL Mot. 12-18.) These requests must be rejected.

As to Rule 16 disclosures, the Government has stated that it has complied in good faith with its discovery obligations under Rule 16. (Gov't Opp. 20.) Further, the Government has represented that it will continue to produce discoverable materials collected in its ongoing

investigation and review prior productions to ensure full disclosure. (*Id.*) Thus, any demand that the Government disclose Rule 16 materials is, at best, premature and otherwise moot. Any request for Rule 16 disclosures will therefore be DENIED.

Regarding the Rule 404(b) material, the Government has stated that it will comply with the "pertinent rule and laws regarding the timing of 404(b), which "only requires 'reasonable notice in advance of trial' for the admission of prior convictions and bad acts," *see United States v. Fennell*, 496 F. Supp. 2d 279, 284 (S.D.N.Y. 2007). (Gov't Opp. 20.) Defendants nevertheless urge this court to require production of such materials "sixty days before trial." (VL Mot. 13; UL Mot. 24.) As trial has not yet been scheduled in this matter, the Court declines to direct the Government to disclose Rule 404(b) material sixty days prior to jury selection. Once a trial has been scheduled, Defendants are directed to renew their request to this Court. However, the Court notes that sixty days is quite excessive. Indeed, this case is not especially complex, and courts have found disclosure of such information ten days before trial to be sufficient. *See, e.g.*, *United States v. Kaminski*, No. 97-CR-382 (RSP) (DH), 1998 WL 275594, at *4 (N.D.N.Y. May 27, 1998) ("The government acknowledges its obligation under *Brady* and agrees to produce witness statements and evidence bearing on the credibility of its witnesses ten days prior to trial. I cannot compel earlier production of this material."); *United States v. Richardson*, 837 F. Supp. 570, 576 (S.D.N.Y. 1993) (directing the government to disclose Rule 404(b) material within ten days of the trial because ten days was a reasonable amount of time). Even when the case is complex, courts have found that thirty days would be more than sufficient for disclosure. *United States v. Gonzalez*, No. 06-CR-726(WHP), 2008 WL 3914877, at *6 (S.D.N.Y. Aug. 26, 2008) ("However, in light of the complex nature of this case, the Government shall notify Defendants of

its Rule 404(b) evidence thirty days prior to jury selection and trial."). The request for 404(b) materials is DENIED at this time.

Turning to Defendants' motions for *Brady* disclosures, the Government has explained that it "fully recognizes its continuing obligations to disclose favorable evidence to the accused" under *Brady* and will "provide timely disclosure when and if any such additional material comes to light," (Gov't Opp. 21.) As the Government has acknowledged its obligations under *Brady*, Defendants' motions are either moot or premature in the absence of an alleged discovery violation. The requests are therefore DENIED without prejudice to renew.

Finally, the Government intends to produce *Giglio* and Jencks Act material "at least one week before trial or as so ordered by the Court," thereby acknowledging its obligations and its intent to comply with this Court's directives. (*Id.* at 23.) Because (1) trial has yet to be scheduled, (2) Defendants have not established that they would be prejudiced in the absence of this material at this time, and (3) this Court is without authority under the Jencks Act to order "pretrial disclosure of witness statements," *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) (explaining that 3500 material was not "the subject of discovery until th[e] witness has testified on direct examination"), Defendants' motions are DENIED.

## CONCLUSION

For the foregoing reasons, Defendants pretrial motions are DENIED. The Clerk of Court is respectfully requested to terminate the motion at ECF Nos. 38 and 39.

Dated:  September 21, 2019          SO ORDERED:
        White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge